(No. 22967

THE PEOPLE *ex rel.* Joseph B. McDonough, County Collector, Appellee, *vs.* THE CHICAGO UNION LIME WORKS COMPANY, Appellant.

*Opinion filed June 14, 1935—Rehearing denied October 9, 1935.*

Orr, J., dissenting.

Daniel S. Wentworth, for appellant.

Thomas J. Courtney, State's Attorney, (Hayden N. Bell, Jacob Shamberg, William P. Kearney, and William T. Crilly, of counsel,) for appellee.

Mr. Justice Herrick delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county overruling the appellant's objections and ordering a sale of its property for the delinquent taxes of 1931. While issues are presented on the ruling of the trial court in the admission and exclusion of evidence, the two major questions here are (1) whether the property is subject to taxation as real estate; and (2) whether the valuation and assessment are so excessive and illegal as to constitute a legal fraud.

It was stipulated on the hearing that the objector had appeared before the assessor and the board of appeals, objected to its assessment, had fully pursued its legal remedies before the taxing bodies, and that the collector made a *prima facie* case.

The property in question is an exhausted stone quarry on the near southwest side of Chicago. The property was abandoned for quarrying purposes in 1929. The total cubic content of the excavated pit is 3,506,418 cubic yards.

It is urged, and argued with great earnestness, that the property being a depleted quarry is not taxable as real estate. Section 1 of the Revenue act (Cahill's Stat. 1933, chap. 120, p. 2302; Smith's Stat. 1933, p. 2352;) provides that all real and personal property in this State must be assessed and taxed except such as may be exempted. This statutory section is the expression of the authority granted by section 1 of article 9 of our State constitution whereby power is given to tax. Property exempt from taxation must fall within some of the classifications made by section 3 of article 9 of the constitution. The phrase "all real and personal property in this State" embraces property, both tangible and intangible, of every kind and character. (*People* v. *National Box Co.* 248 Ill. 141.) Exhausted stone quarries are not named in any of the constitutional exceptions. The enumerated class of property exempted by constitutional provision is a limitation on the power of the legislature to exempt any other property and all property not within the exemption is subject to taxation. (*People* v. *City of St. Louis,* 291 Ill. 600.) The property in question is real estate subject to taxation.

We now take up the issue made upon the valuation of the objector's property. The board of appeals fixed the total assessed valuation at $215,526, which was $143,474 less than the valuation placed upon the property by the assessor. This valuation was equalized by the application of thirty-seven per cent—the equalizing factor in general use in Cook county in the determination of valuations of real estate for taxation purposes. On the part of the objector the evidence of its two expert witnesses tended to prove the fair cash market real estate value of the property at $12,800. In fixing this valuation the witnesses ex-

cluded the business income from the property as an element on which their opinions were based. On the part of the collector the evidence showed that the property was in actual use as a dumping ground for hire, and that the usual dumping charge was about thirty cents per cubic yard. In 1929, 52,628 cubic yards, and in 1930, 76,485 cubic yards, were dumped. The witnesses for the collector arrived at the market value of the property by an estimate as to its income capacity as a dumping ground over a twenty-year period. Computing interest on the capital investment and by reason of depletion of the property as a dumping ground at the end of the period, a four per cent per annum sinking fund was established to reimburse the investor for his original capital investment. Deductions for salaries, maintenance, insurance and taxes were made. By this method a net yearly income of $27,000 over the twenty-year period was reached. As representing twelve per cent of the capital value, $9000 from the $27,000 annual net income was applied to reimburse the depletion in capital value. Calculated by this system, a valuation of $225,000 was fixed as the fair cash market value of the property. There was offered in evidence by the collector an appraisal of this same property for the years 1928, 1929 and 1930 made by the objector's appraiser, by which the fair cash market value of the property was fixed for taxation purposes for the year 1928 at $152,402, for 1929 at $155,498 and for 1930 at $158,603. In these valuations the surface value and the value of the property as a dumping ground were computed separately. The value of the property as a dumping property was fixed as follows: For 1928 at $139,860, for 1929 at $142,214, and for 1930 at $144,513. In arriving at such valuations substantially the same method was employed to determine the capital value of the property as a dump as was used by the collector's witnesses although the fixed period of time taken as the basis was thirty years and the price per cubic yard for dumped material was fifteen cents.

The objector did not offer any sworn evidence as to the price per cubic yard charged for dumping material on the property. The supervising deputy assessor testified for the collector. He stated that he had experience in the valuation of property of the kind in question and that he had examined the property, and in his opinion the fair cash market value of the property was $359,219.

The law presumes that in fixing the value of the property the taxing authorities have properly discharged their duties and that the tax is just. (*People* v. *Millard,* 307 Ill. 556.) One objecting to the valuation placed upon his property by the taxing body has the burden of proving, by clear and convincing evidence, a fraudulent over-valuation, (*People* v. *Millard, supra; People* v. *Elmwood Cemetery Co.* 317 Ill. 547;) and it is not sufficient to prove a mere over-valuation, (*People* v. *Norton,* 358 Ill. 272,) but the evidence must establish that such excess valuation is the result of some improper, corrupt or illegal motive on the part of the assessing authorities or is so grossly excessive as to create a constructive fraud. (*Sanitary District* v. *Young,* 285 Ill. 351.) It may be conceded that an abandoned quarry, as such, may not have a definite market value. Neither has a bridge, tunnel nor smoke-stack. Such property, however, has a value. It may be of an illusive type, yet here the property is well located and is income-producing, and as the value for dump purposes is lessened its utility as a building site or public use for a playground or park purposes is correspondingly increased. Such property cannot be said to have a nominal value, only. While the productiveness of property is not the sole criterion in fixing its value for taxation purposes, yet where the property is of the character here presented, its income capacity is a material factor to be considered in determining its actual present market value. (*State of Illinois* v. *Illinois Central Railroad Co.* 27 Ill. 64.) Nor is the assessment here an attempt to assess business profits. The value of

the property does not depend on the business astuteness of the owner. A vital factor of the value is the net earning capacity as a dump property conducted by a person of ordinary business prudence and capacity. The objector has failed to establish the burden cast upon it of proving that the value of the property as finally fixed by the board of appeals was so grossly excessive as to amount to a legal fraud.

It is earnestly insisted that the trial court erred in not permitting the two expert witnesses for the objector to testify to the elements taken into consideration in forming the opinion, as expressed by them, of the market value of the premises in question. It was conceded in the trial court that these witnesses omitted the element of income. Such element was material and should have been considered as one of the factors upon which an opinion of market value could be properly based. (*State of Illinois* v. *Illinois Central Railroad Co. supra.*) What other elements the witnesses considered becomes immaterial. Neither is it of any avail to the objector that the stipulation that the witnesses excluded the question of income was made after the court had ruled upon the question of permitting the witnesses to testify as to the elements considered by them.

We have carefully reviewed the other errors argued on the rulings of the county court on the admission and exclusion of evidence and find no prejudicial error committed.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE ORR, dissenting:

My objection to the conclusion reached in this opinion· is that it may found a dangerous precedent in valuing property for *ad valorem* taxation. The valuation is based solely on an estimate of the property's income capacity over a twenty-year period. Of these, only two are past years, while the others are years in the future and therefore entirely speculative. The opinion confirms a valuation based

upon the projection of the present income into the distant future, and to that extent it goes too far. By such a rule many inconsistencies would necessarily arise in the valuation of similar property, contrary to the equality and uniformity requirements of the State and Federal constitutions. For instance, if an adjacent stone quarry of the same general character were filled with water and used as a swimming pool, the income would, perhaps, not permit the same kind of valuation. And it would also be easily possible that a similar property might be used for the same dumping business but operated by a tenant, so that the rental income, rather than the business profits, would be the determining factor.

The opinion also erroneously assumes that "the value of the property does not depend on the business astuteness of the owner." It would be difficult to find any property which has earning capacity which would neither shrink nor enlarge according to the initiative and business capacity of its owner. Nicholas, in his work on Eminent Domain, (2d ed.) sec. 446, says: "Furthermore, care must be taken to distinguish between income from the property and income from the business conducted on the property;" and (sec. 229) that business income "is not considered in determining the value of such land"—it only illustrates uses: also (sec. 219) that "profits, that might be derived from devoting the land to a particular use, depend so much upon contingencies that cannot be foreseen that they have no real bearing upon present value." It is recognized that future profits depend to a large degree upon proper management and many other contingencies which may or may not happen. *Illinois Light and Power Co.* v. *Bedard,* 343 Ill. 618.